UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

TRUSTEES OF THE LOCAL 813 PENSION TRUST
FUND, TRUSTEES OF THE LOCAL 813 INSURANCE
TRUST FUND, and TRUSTEES OF THE NURSES AND
LOCAL 813 IBT RETIREMENT TRUST FUND,

       Plaintiffs,

    - against -

RIZZO ENVIRONMENTAL SERVICES CORP.,
XYZ CORPORATIONS 1-10, and JOHN AND
JANE DOES 1-10,

       Defendants.

-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19 CV 6622 (RPK) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On November 25, 2019, plaintiffs Trustees of the Local 813 Pension Trust Fund (the "Pension Fund"), Trustees of the Local 813 Insurance Trust Fund (the "Insurance Fund"), and Trustees of the Nurses and 813 IBT Retirement Trust Fund (the "Retirement Fund") (together, "plaintiffs" or the "Funds") commenced this action against Rizzo Environmental Services Corporation ("Rizzo Environmental" or the "Company"), XYZ Corporations 1-10 and John and Jane Does 1-10 (together, "defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA").

Despite proper service on the defendant on November 26, 2019 (ECF No. 6), defendant failed to answer or otherwise respond to the Complaint. On December 27, 2019, after defendant failed to appear, answer, or otherwise respond to the Complaint, the Clerk of Court entered a certificate of default against the Company. (ECF No. 8). On January 31, 2019, plaintiffs moved for a default judgment against defendant. On that same day, the Honorable Margo K. Brodie

referred the motion to the undersigned to determine liability and damages.[1]  Defendant has failed to submit any paperwork to the Court in response to the motion for default judgment.

For the reasons set forth below, the Court respectfully recommends that a default judgment be entered against defendant Rizzo Environmental.  The Court further recommends that plaintiffs be awarded **$229,468.53** in damages for withdrawal liability, delinquent contributions, prejudgment interest, liquidated damages, and attorneys' fees and costs.

FACTUAL BACKGROUND

According to the Complaint, plaintiff Trustees are fiduciaries of the Funds, a group of jointly administered, multi-employer trust funds established and maintained pursuant to collective bargaining agreements in accordance with the Taft Hartley Act § 302(c)(5)-(6); employee benefit plans within the meaning of ERISA §§ 3(1)-(3) and 502(d)(1), 29 U.S.C. §§ 1002(1)-(3) and 1132(d)(1); and multi-employer plans within the meaning of ERISA §§ 3(37) and 515, 29 U.S.C. §§ 1002(37) and 1145.  (Compl.[2] ¶ 8).  The Funds are administered from 48-18 Van Dam Street, Suite 201, Long Island City, New York 11101.  (Id.)  Plaintiffs allege that defendant Rizzo Environmental is a for-profit domestic corporation with its principal place of business located at 117 Magnolia Avenue, Westbury, New York 11590.  (Id. ¶ 10).  Defendants XYZ Corporations 1-10 are fictitious entities whose identities are not currently known to the plaintiffs but believed to be trades or businesses under common control with Rizzo Environmental within the meaning of ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).  (Id. ¶ 11).  Defendants John and Jane Does 1-10 are fictitious individuals whose identities are not currently known to the plaintiffs but are believed to be sole proprietors under common control with Rizzo

---

[1] On February 6, 2020, the case was reassigned to the Honorable Rachel P. Kovner.

[2] Citations to "Compl." refer to the Complaint, filed on November 25, 2019, ECF No. 1.

Environmental, within the meaning of ERISA § 4001(b)(1), 29 U.S.C. § 1301(b)(1).  (Id. ¶ 12).

Plaintiffs allege that Rizzo Environmental was a party to a collective bargaining agreement (the

"CBA") with Local Union No. 813, International Brotherhood of Teamsters (the "Union"), with

respect to which the Funds are third-party beneficiaries.  (Id. ¶ 13).

According to the first count of the Complaint, on or around September 30, 2019, the

Funds' auditor found that Rizzo Environmental had failed to remit $6,876.00 in contributions to

the Insurance Fund, $3,735.00 in contributions to the Pension Fund, and $1,296.00 in

contributions to the Retirement Fund for covered work performed by the employee Jose A.

Garcia, Jr. from February through May 2019.  (Id. ¶ 18).  Plaintiffs allege that this was in

violation of ERISA § 515, 29 U.S.C. § 1145, which requires employers to pay contributions to

the Funds in accordance with the terms and conditions of the applicable collective bargaining

agreement.  (Id. ¶¶ 16, 17).  Plaintiffs demanded judgment against Rizzo Environmental for

$11,907.00 in contributions due and owing under the CBA, as well as an amount to be

determined of statutorily prescribed interest, liquidated damages, attorneys' fees, and costs.  (Id.

¶ 19).

Plaintiffs' second count alleges that as of May 31, 2019, Rizzo Environmental ceased all

covered operations within the meaning of the CBA.  As such, plaintiffs allege that Rizzo

Environmental completely withdrew from the Pension Fund within the meaning of ERISA §

4203(a), 29 U.S.C. § 1383(a).  (Id. ¶ 21).  Pursuant to ERISA § 4219(b)(1) and (c)(1), 29 U.S.C.

§ 1399(b)(1) and (c)(1), by letter dated June 18, 2019, the Pension Fund notified Rizzo

Environmental that it had effectuated a complete withdrawal from the Fund and its allocated

share of the unfunded vested liabilities was $146,778.00, which was payable in 240 monthly

installments of $681.00.  (Id. ¶ 22).  After not having received the demanded payments within

sixty days, on October 30, 2019, plaintiffs sent a letter notifying Rizzo Environmental that it had failed to cure its default, and that the entire amount of its withdrawal liability, in addition to accrued interest, was immediately due and owing.  (Id. ¶ 24; Ex. C).  This total amounted to $148,979.67.  (Id.)  Under ERISA § 4221(b)(1), 29 U.S.C. § 1401(b)(1), plaintiffs allege that Rizzo Environmental is liable to pay the accelerated amount of its withdrawal liability after its failure to initiate arbitration proceedings.  (Id. ¶ 26).  Plaintiffs demand judgment for Rizzo Environmental's allocated share of the unfunded vested liability of the Pension Fund, as well as liquidated damages, interest, attorneys' fees and costs.  (Id. ¶ 27).

Plaintiffs' third and fourth counts allege that XYZ Corporations 1-10 were trades or businesses under common control with Rizzo Environmental within the meaning of ERISA and that John and Jane Does were sole proprietorships under common control with Rizzo Environmental under ERISA § 4001(b)(1).  (Id. ¶¶ 29, 33).  As such, the plaintiffs allege that XYZ Corporations and John and Jane Does 1-10 are jointly and severally liable for the withdrawal liability as businesses and sole proprietorships under common control with Rizzo Environmental respectively.  (Id. ¶¶ 30, 34).

## DISCUSSION

A.  Default Judgment

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See

id.  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that

accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and, (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).  Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant."  Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery.  See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).  When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages.  Id.  Thus, for the purposes of an inquest, the court accepts as true all factual allegations in the complaint, except those claims relating to damages, and the plaintiff is "entitled to all reasonable inferences from the evidence offered."  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981).  While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing."  Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

Thus, plaintiffs bear the burden of demonstrating the extent of their damages as to each element of the award they seek.  In support of their motion, plaintiffs have submitted the

declarations of Dominick J. Giglio, Fund Auditor; Sharon Huang, Administrator of the Pension

Fund; and, Neil V. Shah, Esq., attorney for the plaintiffs.  (Pls.' Mot.[3]).

B. Unpaid Contributions

      ERISA provides that "[e]very employer who is obligated to make contributions to a

multiemployer plan . . . under the terms of a collectively bargained agreement shall . . . make

contributions in accordance with the terms and conditions of . . . such agreement."  29 U.S.C.

§ 1145.  Section 1145 "establishes the elements necessary to make out a claim for failure to pay

contributions."   Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, No. 13 CV 2701,

2014 WL 5305983, at *2 (E.D.N.Y. Oct. 15, 2014).   Such an action may be brought by a

fiduciary to recover the unpaid contributions, interest on the unpaid contributions, and liquidated

damages as specified by the subject plan.  29 U.S.C. § 1132(g)(2).

      Here, the plaintiffs are Trustees of jointly administered, multi-employer labor-

management trust funds established and maintained pursuant to collective bargaining agreements

in accordance with the Taft-Hartley Act § 302(c)(5)-(6), 29 U.S.C. § 186(c)(5)-(6); employee

benefit plans within the meaning of ERISA §§ 3(1)-(3) and 502(d)(1), 29 U.S.C. §§ 1002(1)-(3)

and 1132(d)(1); and, multi-employer plans within the meaning of ERISA §§ 3(37) and 515, 29

U.S.C.§§ 1002(37) and 1145.  (Compl. ¶ 8).  Pursuant to the CBA, Rizzo Environmental was

required to remit contributions to the Funds on behalf of those employees covered by the CBA at

rates set forth in the CBA.  (Id. ¶ 13).

      Plaintiffs have submitted a declaration from the Funds' auditor, Dominick J. Giglio, in

support of Default Judgment in which he states that the Company has failed to remit $6,876.00 in

---

    [3] Citations to "Pls.' Mot." refer to plaintiffs' Memorandum of Law in Support of Motion
for Default Judgment filed on January 31, 2020, ECF No. 10.

contributions to the Insurance Fund, $3,735.00 in contributions to the Pension Fund, and $1,296.00 in contributions to the Retirement Fund for covered work performed by employee Jose A. Garcia, Jr. from February through May 2019.  (Compl. ¶ 4; Giglio Decl. ¶¶ 11, 13).  Furthermore, the declaration notes that the Company was obligated to contribute on a monthly basis $382.00 per week per covered employee to the Insurance Fund, $207.50 per week per covered employee to the Pension Fund, and $72.00 per week per covered employee to the Retirement Fund.  (See generally Giglio Decl. ¶ 2, Ex. 1).  The CBA also provides that the Funds' respective Agreements and Declarations of Trust have been adopted by the Company and that the Company agrees to be bound by the Trusts as if the same were incorporated into the CBA at length.  (Giglio Decl., Ex. 1, ¶ 23(d)).  According to Mr. Giglio's declaration, the remittance reports from February through May 2019 show that Jose A. Garcia, Jr. worked eighteen full weeks and  thus, defendant owes $6,876.00 in contributions to the Insurance Fund, $3,735.00 in contributions to the Pension Fund and $1,296.00 in contributions to the Retirement Fund on Mr. Garcia's behalf.  (Giglio Decl. ¶ 13).

Having reviewed the records and other documents provided by plaintiffs, including the sworn declarations of Mr. Giglio and the Funds' attorney, Mr. Shah, and the records of contributions due and owing, and having received no challenge to the plaintiffs' submissions, the Court finds that plaintiffs have established that Rizzo Environmental failed to comply with their obligation to pay delinquent contributions under the CBA and ERISA.  The Court further finds that the amount of delinquent contributions owed equals $11,907.00.  Accordingly, it is respectfully recommended that plaintiffs be awarded **$11,907.00** in unpaid contributions.

1.   Interest on Unpaid Contributions

Here, the Funds' Trust Agreements provide that interest shall accrue on delinquent contributions at 1.5% per month to the Insurance Fund and the Pension Fund, and interest at the Wall Street Journal prime rate to the Retirement Fund.  (Giglio Decl. ¶¶ 8-10).  Plaintiffs submitted a declaration from the Funds' auditor explaining how he used those specified rates to calculate the accrued interest on the delinquent contributions in the amount of $1,691.67.  (Giglio Decl. ¶¶ 16-19).  The auditor also included a spreadsheet detailing those calculations.  (Id., Ex. 8).  Having reviewed the Trust Agreements and the computations provided by the auditor, the Court respectfully recommends that the Funds be awarded **$1,691.67** in accrued interest owed on the delinquent contributions.

2.   Liquidated Damages on Unpaid Contributions

Section 502(g) of ERISA mandates an award of liquidated damages in an amount equal to the greater of either the (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent of the amount determined by the court.  ERISA § 502(g)(2)(C), 29 U.S.C. § 1132(g)(2)(C).  Here, the Pension Fund and the Insurance Trust provide for liquidated damages equal to the greater of the amount of interest on the unpaid contributions or 20% of the unpaid contributions, while the Retirement Fund provides for liquidated damages in the amount of 20% of the unpaid contributions.  (Giglio Decl. ¶¶ 8-10).  Again, plaintiffs' submissions include a declaration from the Funds' auditor explaining that he calculated liquidated damages based on an amount equal to 20% of the delinquent contributions, resulting in a total liquidated damages award of $2,381.40 owed to the three Funds.  He has also included a spreadsheet detailing the liquidated damages calculations.  (Giglio Decl. ¶¶ 16-19).  Having reviewed the Trust Agreements, as well as the calculations provided by the auditor, the

Court respectfully recommends that the Funds be awarded **$2,381.40** in liquidated damages owed on the delinquent contributions.

C. <u>Withdrawal Liability</u>

ERISA specifies that a complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). Upon such withdrawal, the plan sponsor is empowered to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382. The employer then has 90 days to request that the sponsor review its withdrawal liability determination and submit any disputes about the amount of liability to arbitration. 29 U.S.C. §§ 1399(b)(2), 1401(a)(1). Any employer who fails to initiate such arbitration waives its right to contest the amount of withdrawal liability assessed by the plan sponsor, and a district court will not make an independent determination as to the reasonableness of the calculations. <u>See</u> <u>Gesualdi v. Seacoast Petroleum Products, Inc.</u>, 97 F. Supp. 3d 87, 98 (E.D.N.Y. 2015); <u>see also</u> <u>Trustees of Local 813 Ins. Fund v. Freedom Demolition, Inc.</u>, 2014 WL 5305983, at *5 (noting that "[b]y failing to initiate an arbitration proceeding within sixty days thereafter, defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs"). Further, "[i]n the event of a default, a plan sponsor may request immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest." 29 U.S.C. § 1399(c)(5).

Here, plaintiffs allege that the defendants effectuated a complete withdrawal from the Pension Fund.[4]  (Compl. ¶ 2). Plaintiffs allege that as a result of this complete withdrawal,

---

[4] Plaintiffs only demand judgment from Rizzo Environmental for its withdrawal liability

Rizzo Environmental became liable to the Pension Fund for $146,778.00 in withdrawal liability. (Id.)  The Fund notified Rizzo Environmental of this withdrawal liability by letter dated June 18, 2019.  (See generally Huang Decl.[5] ¶ 4, Ex. 1).  This letter established a repayment schedule, under which Rizzo Environmental's first payment was due on or before August 18, 2019.  (Id.) After Rizzo Environmental failed to make its required August 18, 2019 payment, the Pension Fund notified Rizzo Environmental on August 27, 2019 that it was in default of its obligation to pay withdrawal liability and offered it an opportunity to cure the default within sixty days.  (See generally Huang Decl. ¶ 5, Ex. 2).  The letter also notified the Company that if it failed to cure the default, the Fund would elect to accelerate the Company's withdrawal liability and assess interest on the total outstanding liability.  (Id.)  A second letter was sent on October 30, 2019, again warning Rizzo Environmental of its obligation to pay.  (See generally Huang Decl. ¶ 6, Ex. 3).  According to the Pension Fund, the defendant has not made any payments towards its withdrawal liability assessment.  (Huang Decl. ¶ 7).  Since the defendant has not sought to commence arbitration proceedings within the period set by the statute, defendant has waived its right to contest the amount of withdrawal liability owed.  See Trustees of Local 813 Ins. Fund v. Freedom Demolition, Inc., 2014 WL 5305983, at *5.  As such, the Court finds that the plaintiffs have established liability through both their allegations in the Complaint and the supporting declarations.  (See, e.g., Huang Decl. ¶ 13).  The Court respectfully recommends that the plaintiffs be awarded **$146,778.00** in withdrawal liability as to the Pension Fund.

---

as to the Pension Fund, unlike the unpaid contributions, which plaintiffs seek for all three Funds. (Pls.' Mot. at 3).

[5] Citations to "Huang Decl." refer to Sharon Huang's Declaration in Support of Motion for Default Judgment, ECF No. 10.

1.  <u>Interest on the Withdrawal Liability</u>

Plaintiffs also seek interest on the Pension Fund withdrawal liability owed by the defendant.  Pursuant to ERISA, plaintiffs are entitled to an award of interest on unpaid withdrawal liability calculated from the date the first liability payment was due until the date of final judgment.  29 U.S.C. § 1132(g)(2)(B).  The failure of an employer to "make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 29 U.S.C. § 1451(b).  Thus, in addition to the withdrawal liability owed, the Pension Fund is entitled to a mandatory award of interest, liquidated damages, and reasonable attorneys' fees, and costs pursuant to ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2).  <u>See, e.g.</u>, <u>Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co.</u>, 270 F. Supp. 3d 593, 614 (E.D.N.Y. 2017).  Section 502(g) of ERISA provides that the amount of interest awarded is to be "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  ERISA § 502(g)(2)(B), (E), 29 U.S.C. § 1132(g)(2)(B), (E).

Here, the Trustees adopted specific withdrawal liability procedures to govern the assessment and collection of withdrawal liability.  (Huang Decl. ¶ 10).  Section 10 of the Withdrawal Liability Procedures provides that if withdrawal liability payments are not made when due, "interest on the payment shall accrue from the due date until the date on which the payment is made . . . at the rate established by the Pension Benefit Guaranty Corporation ('PBGC') pursuant to Section 4219(c)(6) of ERISA or at the prime rate plus 3%, whichever is greater."  (Huang Decl. ¶ 11).  The Pension Fund's auditor calculated interest on the unpaid withdrawal liability based on that procedure and determined that the accrued interest due from August 18, 2019 through January 31, 2020 totals $5,465.45.  (<u>Id.</u>)  Again, plaintiff provided an

exhibit showing their calculations.  (Id.)  Plaintiffs seek an interest award of $5,465.45 in interest owed through January 31, 2020.  (Huang Decl. ¶ 13).  As such, they have not accounted for the time from January 31, 2020 to the date this Report and Recommendation is issued.  Thus, in addition to plaintiffs' calculations, the Court recommends that – in addition to the $450.31 in interest owed for the period from August 18, 2019 to August 31, 2019, the $1,039.63 owed from August 31, 2019 to September 30, 2019, the $3,027.30 owed for the period from September 30, 2019 to December 31, 2019 – the plaintiffs also be awarded $9,478.92 in accrued interest from December 31, 2019 to October 31, 2020.   As such, the Court recommends awarding a total of **$13,996.16** in interest.

### 2.  Liquidated Damages on Withdrawal Liability

ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions.  29 U.S.C. § 1132(g)(2)(C).  Courts regularly award liquidated damages on withdrawal liability under this provision.  See, e.g., Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, 2014 WL 5305983, at *5 (assessing liquidated damages on withdrawal liability as well as on unpaid contributions); Deianni v. New Media Printing, 2012 WL 3842596, at *6 (awarding liquidated damages of 20% on withdrawal liability even after denying award of unpaid contributions).

Since the Court has recommended an award of withdrawal liability totaling $146,778.00 (see supra Section C), the Court respectfully recommends that plaintiffs be awarded liquidated damages of **$29,355.60**, corresponding to 20% of the withdrawal liability.

D. Attorneys' Fees and Costs

Plaintiffs seek $22,406.25 in attorneys' fees and $1,815.64 in costs incurred in connection with this action, pursuant to 29 U.S.C. § 1132(g)(2)(D).  (Pls.' Mot. at 15).  In support of these requests, plaintiffs' counsel has submitted contemporaneous time and billing records in accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  These billing records submitted by Proskauer Rose LLP (the "Firm") set forth the dates and amount of time, the hourly rate, the name of the attorney rendering those services, and a description of the services performed.  (Id.)

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  See Perdue v. Kenny A., 559 U.S. 542, 546, 551-52 (2010); Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183 (2d Cir. 2008); Cowan v. Ernest Codelia, P.C., No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), aff'd, 50 F. App'x 36 (2d Cir. 2002).  Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors.  Cowan v. Ernest Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

1. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183-84.  To calculate the presumptively reasonable fee, a court must first

determine a reasonable hourly rate for the legal services performed.  Id.  To determine the

reasonable hourly rate applicable, the Court "looks to the district in which the reviewing court

sits." Gesualdi v. Dove Mason Supply Co., Inc., No. 19 CV 1181, 2020 WL 1538746, at *6

(E.D.N.Y. March 11, 2020) (citing Scharff v. County of Nassau, No. 10-4208, 2016 WL

3166848, at *4).  In Arbor Hill, the Second Circuit adopted the following factors to guide the

court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the
> questions; 3) the level of skill required to perform the legal service
> properly; 4) the preclusion of employment by the attorney due to
> acceptance of the case; 5) the attorney's customary hourly rate; 6)
> whether the fee is fixed or contingent; 7) the time limitations
> imposed by the client or the circumstances; 8) the amount involved
> in the case and the results obtained; 9) the experience, reputation,
> and ability of the attorneys; 10) the "undesirability" of the case;
> 11) the nature and length of the professional relationship with the
> client; and 12) awards in similar cases . . . .

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 187 n.3

(citation omitted).  A number of courts within the Second Circuit have applied these factors

when awarding attorney's fees.  See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229,

2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New

Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y.  2010); Lochren v. County of Suffolk, No. 01 CV

3925, 2008 WL 2039458, at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co.,

Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

Among other things, courts are instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . ., the timing demands
> of the case, whether the attorney might have an interest
> (independent of that of his client) in achieving the ends of the
> litigation or might initiate the representation himself, whether the
> attorney might have initially acted pro bono . . ., and other returns

(such as reputation, etc.) the attorney might expect from the representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007).  In awarding attorney's fees, the Court is guided by the fact that default actions are typically relatively simple legal matters, while taking into account the attorney's degree of skill and the Court's own experience dealing with similar claims.

Here, the Firm seeks to bill at a rate of $400 per hour for work performed by partner Anthony S. Cacace; $325 per hour for work performed by senior associate Neil V. Shah; $300 per hour for work performed by staff attorney Anastasia S. Gellman; $200 per hour for work performed by staff attorney Nanci R. Hamilton; and $100 per hour for work performed by legal assistants, litigation support staff, and research librarians.  (Pls.' Mot. at 15).  Anthony S. Cacace is a partner at the Firm and has practiced law in the State of New York since 2009.  (Shah Decl. ¶ 13).  He has over ten years of experience in litigation and has been prosecuting ERISA actions to recover delinquent contributions and withdrawal liability since 2009.  (Shah Decl. ¶ 13).  Neil V. Shah is a senior associate at the Firm and has practiced law in the States of New Jersey and New York since 2010.  (Shah Decl. ¶ 14).  He has over nine years of experience in litigation.  (Shah Decl. ¶ 14).  Anastasia S. Gellman is a staff attorney who has nine years of experience in litigation and has been prosecuting ERISA actions since 2018.  (Shah Decl. ¶ 15).  Nanci R. Hamilton is also a staff attorney who has over two years of experience and has been prosecuting ERISA actions since 2019.  (Shah Decl. ¶ 16).  Allen F. Healy, Anthony Lopez, and Jesus Hernandez are managing clerks in the Firm's litigation support department; Gayathri J. Menon is a legal assistant; and, Sherri Cupplo is a research specialist.  (Shah Decl. ¶¶ 17, 18, 19).  Plaintiffs seek an award of $100 per hour for their time spent on this matter. (Id.)

These rates are standard for work in connection with an ERISA default in the Eastern District; as such, the Court recommends that the rates charged here for the work of the attorneys be found acceptable.  See, e.g., Gesualdi v. D. Gangi Contracting Corp., No. 18 CV 3773, 2019 WL 1130729, at *8 (E.D.N.Y. Feb. 11, 2019) (reducing rate from $450 an hour for the partner attorneys to $400 an hour); Trustees of Local 522 Pension Fund v. Consolidated Cos., No. 17 CV 1991, 2018 WL 2078117, at *9-10 (E.D.N.Y. Feb. 6, 2018) (approving rates of $350 for partners and $300 for experienced associates); Division 1181 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co., 270 F. Supp. 3d at 623 (approving rates of $350 and $300 for partners and $200 for an associate in ERISA default action); Trustees of Local 522 Pension Fund v. Bayway Lumber and Home Center, No. 16 CV 5286, 2017 WL 9511077, at *6 (E.D.N.Y. July 25, 2017) (recommending rates of $325 and $300, respectively, for partners in ERISA default); Bakery & Confectionary Union & Indus. Pension Fund v. Mt. Rose Ravioli & Macaroni Co., Inc., No. 09 CV 3068, 2011 WL 6130975, at *5 (E.D.N.Y. Nov. 10, 2011) (finding a partner's hourly rate of $330 to be reasonable for ERISA litigation); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner and $280 per hour for work by associate in ERISA litigation, including summary judgment motion); Finkel v. Fred Todino & Sons, Inc., No. 08 CV 4598, 2010 WL 4646493, at *6 (E.D.N.Y. Oct. 8, 2010) (approving rate of $370 per hour for partner and $275 per hour for associate in ERISA withdrawal liability case); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

It also appears the rates for the non-attorneys are well within the range accepted by courts in this district. See, e.g., Finkel v. Firequench, Inc., No. 20 CV 0010, 2020 WL 1323017, at *2 (E.D.N.Y. Mar. 20, 2020) (finding rates of $120 per hour reasonable for paralegal work); Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746, at *6 (finding hourly rates of $110 for paralegals to be reasonable); Trustees of Pavers and Road Builders District Council Welfare, Pension, Annuity, and Apprenticeship, Skill Improvement and Safety Funds v. Shelbourne Construction Corp., No. 19 CV 2312, 2020 WL 1668041, at *7 (E.D.N.Y. Mar. 5, 2020) (finding that rates of up to $90 for non-attorney support staff to be reasonable).

Based on this Court's knowledge of fees common in this district, the Court recommends awarding the plaintiffs' counsel their requested rates.

2. Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. See, e.g., Irving v. G. & G. Instrument Corp., 2020 WL 1536325 at *5; LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should exclude "excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)); Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746 at *6. If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because those requested for responding to motion papers were "excessive"); Jemine v. Dennis, 901 F. Supp. 2d 365, 393 (E.D.N.Y. 2012) (reducing requested fees 10%

because the "quality and complexity of the submissions and calculations" did not reflect the hours expended); Ehrlich v. Royal Oak Fin. Servs., No. 12 CV 3551, 2012 WL 5438942, at *3-4 (E.D.N.Y. Nov. 7, 2012) (reducing attorneys' fees because the attorney's litigation of the suit made apparent his "lack of experience" and for duplicative entries); Quinn v. Nassau Cnty. Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and another's by 30% for unnecessary and redundant time); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

As noted above, the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, and the names of the individuals who provided these services, along with a description of services performed. (Shah Decl., Ex. 4). Counsel at the Firm have billed a collective 77.75 hours for their work. (Id.). The Firm's records are detailed and do not contain clear redundancies or vague entries. Having reviewed the billing records provided, the Court recommends awarding plaintiffs' requested fees of **$22,406.25**.

3. Costs

Under ERISA, plaintiffs who prevail on enforcement are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are specifically included in the statute, and therefore plaintiffs here may recover them. See 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

Plaintiff has requested $1,815.64 in costs, corresponding to: (1) $715.00 for Westlaw Legal Research; (2) $400.00 for the filing fee in this district; (3) $262.75 paid for Process Server Fee in this state; (4) $262.75 for Process Server Fee for Business Address; (5) $148.19 for LexisNexis Database Search; (6) $14.16 for UPS Delivery Services; (7) $12.64 paid for PACER Database; and, (8) $0.15 paid for Copying and Printing.  Electronic research costs are typically disallowed in the Eastern District.  See Division 1181 Amalgamated Transit Union-New York Employees Pension Fund v. D & A Bus Company, Inc., 270 F. Supp. 3d at 630, citing King v. JCS Enterprise, Inc., 325 F. Supp. 2d 162, 171-173 (E.D.N.Y. July 13, 2004) ("[p]rivate market attorney fee rates reflect overhead costs like electronic research, just as they would reflect the cost of case reporters and other necessary books purchased for a law firm's library").  As such, defendants are not required to pay the fees associated with legal research: $715.00 for Westlaw Legal Research or $148.19 for LexisNexis Database Searches.  The Court recommends approval of the remaining costs totaling **$952.45**, consisting of the costs associated with the filing fee, service of process, and photocopying.

<u>CONCLUSION</u>

In light of the foregoing, the Court respectfully recommends that plaintiffs be awarded damages in the amount of **$229,468.53** reflecting:

  (1) **$11,907.00** in delinquent contributions;

  (2) **$1,691.67** in prejudgment interest on delinquent contributions;

  (3) **$2,381.40** in liquidated damages on delinquent contributions;

  (4) **$146,778.00** in withdrawal liability;

  (5) **$13,996.16** in prejudgment interest on the withdrawal liability;

  (6) **$29,355.60** in liquidated damages on the withdrawal liability;

(7) **$22,406.25** in attorneys' fees; and,

(8) **$952.45** in costs.

Any objections to this Report and Recommendation must be filed with the Clerk of the

Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.

Failure to file objections within the specified time waives the right to appeal the District Court's

Order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.  6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517

F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties

either electronically through the Electronic Case Filing (ECF) system or by mail.


**SO ORDERED.**

Dated:  Brooklyn, New York
        October 31, 2020

                                         /s/ Cheryl L. Pollak
                                        Cheryl L. Pollak
                                        Chief United States Magistrate Judge
                                        Eastern District of New York